UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

VISTA FOOD EXCHANGE, INC.,

        Plaintiff,

  - against -

CHAMPION FOODSERVICE, L.L.C., BC&G
WEITHMAN CONSTRUCTION CO., TYRONE
WEITHMAN, ASHLEY SIMPSON, and LINDA
ATKINSON,

        Defendants.

------------------------------------X

14 Civ. 804 (RWS)

OPINION

A P P E A R A N C E S:


    Attorneys for the Plaintiff

    JONATHAN C. SCOTT, P.C.
    100 Highland Park Village, Suite 200
    Highland Park, TX 75205
    By:  Jonathan Cory Scott, Esq.


    Attorneys for the Defendants

    BAILEY & OROZCO, L.L.C.
    744 Broad Street
    Newark, NJ 07102
    By:  Michael Andrew Orozco, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8-5-14

**Sweet, D.J.**


Plaintiff Vista Food Exchange, Inc. ("Plaintiff" or
"Vista") has moved to remand its action against defendants
Champion Foodservice, L.L.C. ("Champion"), BC&G Weithman
Construction Co., Inc. ("BC&G," together with Champion, the
"Entity Defendants"), Tyrone Weithman ("Weithman"), Ashley
Simpson ("Simpson"), and Linda Atkinson ("Atkinson," and,
together with the Entity Defendants, Weithman and Simpson, the
"Defendants") to the Supreme Court of the State of New York.
Defendants have moved to dismiss the complaint of Plaintiff or,
in the alternative, transfer the action to the United States
District Court for the Northern District of Ohio.


Based on the conclusions set forth below, Plaintiff's
motion to remand is denied and Defendants' motion to dismiss is
granted.  Defendants' motion to transfer is denied.


**Prior Proceedings**


On January 10, 2014, Plaintiff filed its complaint
alleging as to all defendants breach of contract, breach of
implied duty of good faith and fair dealing, and fraud and, as
to Weithman, breach of guaranty.  On February 7, 2014,

1

Defendants removed this action from the Supreme Court of the State of New York on the basis of diversity jurisdiction.

On February 18, 2014, Plaintiff filed a motion to remand to state court on the grounds that forum selection agreements signed by Defendants BC&G and Weithman precluded removal.  On February 19, 2014, Defendants filed a motion to dismiss Plaintiff's complaint for lack of personal jurisdiction, improper venue, and failure to state a claim.  In the alternative, Defendants requested venue transfer.  All motions were marked fully submitted on April 17, 2014.

**Facts**

The allegations of the complaint are assumed to be true and are summarized herein only to the extent necessary to dispose of Defendant's motion to dismiss or transfer venue and Plaintiff's motion to remand.

Plaintiff is a wholesale food business incorporated in New York.  (Compl. ¶ 2.)  BC&G is an Ohio corporation; Champion is a corporation organized under the laws of Ohio, which Plaintiff alleges, upon information and belief, is a shell company with no significant assets, credit lines or capital.

2

(Compl. ¶¶ 3, 5-6.)  The complaint further alleges, upon
information and belief, that the Entity Defendants have been
operated as alter egos of one another, or have been treated by
Weithman as if they were one and the same.  (Compl. ¶ 4.)  Each
Entity Defendant is alleged to be in the business of purchasing
food items from vendors and then assembling and packaging them
for distribution.  (Compl. ¶ 17.)

Weithman is believed to be a resident of Ohio and
President of BC&G and alleged to be the "architect of the
misconduct that Vista complains about."  (Compl. ¶ 7.)  Simpson
is a resident of Michigan and was during all times relevant the
comptroller of the Entity Defendants and is alleged to have
prepared and/or submitted invoices to Vista in New York that she
knew or should have known were inflated.  (Compl. ¶¶ 8.)
Atkinson is a resident of Ohio and employed by the Entity
Defendants in various capacities and is alleged to have prepared
and/or submitted invoices to Vista in New York that she knew or
should have known were inflated.  (Compl. ¶ 9.)

Plaintiff's complaint alleges that on or about
March 1, 2011, BC&G sent an application for credit to Vista's
office in New York (the "Credit Agreement").  (Compl. ¶ 12.)
The Credit Agreement was submitted in connection with

3

establishing an account with Vista to purchase wholesale food
products.  (Compl. ¶ 13.)  Included in the Credit Application
was a promise to pay for all costs, expenses, and fees incurred
in enforcing the obligations thereunder and the costs of
collection.  Id.  The Credit Application also included the
following language (the "venue language"):

> Litigation of all kinds arising from
> transactions subject of this guaranty shall
> be subject to venue in the State and County
> of New York.  New York law shall apply.

(Compl. ¶ 12.)  Plaintiff approved the Credit Application,
accepted a personal guarantee by Weithman (the "Guaranty
Agreement"), and established an account at Vista in New York for
BC&G.  (Compl. ¶ 14.)

     In or about March 2011, Plaintiff alleges that the
Entity Defendants and Vista entered into an oral contract (the
"Oral Agreement") in which Vista agreed to sell to Champion's
food products at one cent above Vista's wholesale item cost and
Champion agreed that it would use Vista as its primary supplier
in connection with the Credit Application.  (Compl. ¶ 16.)
Champion agreed that while initially Champion would estimate its
packaging or non-food costs to be charged to Vista, Champion
would adjust the estimate on past and future orders to reflect

4

Champion's actual cost for packaging and that Vista would be charged for non-food costs at Champion's actual cost.  Id.  The premise of the Oral Agreement was that Champion would handle packaging of Vista meals for its customers by passing through to Vista the non-food costs without a markup, and that Champion would source its food products from Vista.  (Compl. ¶ 20.)

On or about June 20, 2012, a continuing guarantee was executed by Weithman that guaranteed the payment of all debts, obligations, and liabilities of every kind and description whether of the same or different nature than those arising from the previous, current or subsequent grant of credit to BC&G (the "Continuing Guaranty").  (Compl. ¶ 15.)  The Continuing Guaranty contained the same venue language as the Credit Agreement.  Id. Plaintiff contends that the venue language contained in both agreements constituted a binding agreement that venue would be laid in state court in New York County in the event of a conflict.  (Pl.'s Mem. Supp. Remand 3-5.)

The complaint alleges that Defendants inflated their invoices and charges in order to avoid paying Vista sums due for products and services provided by Vista for a period of approximately two years.  (Compl. ¶¶ 18, 23.)  It contends that the Defendants knew that their packaging costs were much less

than the amount they initially estimated, and much less than their true cost, and that Champion went directly to suppliers in order to cut Vista out of the sale. (Compl. ¶¶ 18-19.) The complaint alleges that, by paying Vista less than what was usual and customary, by overcharging Vista on the non-food costs in packaging hundreds of thousands of meals and by circumventing Vista by establishing relationships directly with Vista's suppliers, the Entity Defendants dishonored the Oral Agreement. (Comp. ¶ 20.)

As a result of the Defendants conduct, Plaintiff alleges that it was deprived of the benefit of the Oral Agreement, that Defendants avoided paying the reasonable value of the products that they purchased from Vista, that Defendants hurt Vista's relationships with its suppliers, that Defendants avoided paying Vista the sums due for products or services provided by Vista, and that Vista was misled into paying to the Entity Defendants funds to which they were not entitled. (Compl. ¶¶ 21-24.)

**Discussion**

**1. Defendants' Removal of the State Court Action Was Proper**

Under 28 U.S.C. § 1441, a civil action brought in a state court for which federal district courts have original jurisdiction may be removed by defendants to the federal district court for the district and division embracing the place where such action is pending.  28 U.S.C. § 1441(a).  The party who removes the action and asserts federal jurisdiction "bears the burden of establishing jurisdiction" is proper.  Synergy Advanced Pharms., Inc. v. CapeBio, LLC, 797 F. Supp. 2d 276, 282 (S.D.N.Y. 2011) (quoting Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006)).

Forum selection clauses may "trump what would otherwise be a right to remove cases to federal court."  Yakin v. Tyler Hill Corp., 566 F.3d 72, 76 (2d Cir. 2009).  Absent extraordinary or unusual circumstances, forum selection clauses are enforced.  Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, 134 S. Ct. 568, 583 (2013); see also Bense v. Insterstate Battery Sys. of Am., 683 F.2d 718, 721-22 (2d Cir. 1982).  In the event the language of a forum selection clause is vague or ambiguous, however, the clause must be construed against the drafter.  JP Morgan Chase Bank, N.A. v. Reijtenbagh, 611 F. Supp. 2d 389, 391 (S.D.N.Y. 2009).  A waiver of a "party's statutory right to remove a case to federal court must be clear and unequivocal."

Rabbi Jacob Joseph Sch. v. Province of Mendoza, 342 F. Supp. 2d
124, 128 (E.D.N.Y. 2004) (citing to Karl Koch Erecting Co. v.
New York Convention Ctr. Dev. Corp., 838 F.2d 656, 659 (2d Cir.
1988) (clause providing that no action shall be commenced
"except in the Supreme Court of the State of New York" operated
as a waiver)).

        Plaintiff alleges that, in removing this case, BC&G
and Weithman dishonored the forum selection clauses in the
Credit Agreement and Continuing Guaranty and contends that the
forum selection language in both agreements constituted an
agreement that, in the event of litigation, venue would be laid
in the New York state courts of New York County.  (Comp. ¶ 12;
Pl.'s Mem. Supp. Remand 3-5.)  These arguments, however, cannot
be credited.

        The language contained in both documents is, indeed,
ambiguous.  The text of each the Credit Agreement and Continuing
Guaranty reads as follows: "Litigation of all kinds arising from
transactions subject of this guaranty shall be subject to venue
in the state and county of New York."  The clause does not
specify whether venue will be laid in state or federal court,
only simply that venue will be in New York County, New York.
Were it the case that only state courts existed in New York

County, the designation of state courts would be clear, even if only implied, by factual necessity.  However, because there are also federal courts existing in New York County, it is uncertain which court is preferred and courts in this Circuit have generally found waiver only when a document contains explicit language evidencing waiver or "where the forum selection clause identifies a particular court in which disputes will be heard." Rabbi Jacob Joseph School, 342 F. Supp. 2d at 128 (quoting Unity Creations, Inc. v. Trafcon Indus., Inc., 137 F. Supp. 2d 108, 110 (E.D.N.Y. 2001)) (emphasis added).

Construing the clause in favor of the non-drafting party, as the Court must, the Credit Agreement and Continuing Guaranty cannot be found to clearly require venue exclusively in state court.  Furthermore, because the defendants have demonstrated original jurisdiction pursuant to 28 U.S.C. § 1441, their removal of the action was proper.[1]  28 U.S.C. § 1441(b) (diversity of citizenship is an original basis of federal jurisdiction).

## 2. Vista's Complaint Fails To Establish Personal Jurisdiction

---

[1] Though not entirely clear in Plaintiff's motion to remand, it appears the Plaintiff has only asserted the forum selection clause against the defendants party to the Credit Agreement and Continuing Guaranty — BC&G and Weithman. To the extent the Plaintiff has implied otherwise, the motion to remand would be denied on personal jurisdictional grounds as to the remaining defendants, as further discussed below.

**Under 12(b)(2) For All Defendants Except BC&G And Fails To State A Claim Under 12(b)(6)**

### A. The Complaint Fails to Establish Personal Jurisdiction for All Defendants Except BC&G

Plaintiff bears the burden of demonstrating that personal jurisdiction over each defendant is proper.  See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996); see also Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013).  To determine whether personal jurisdiction is, indeed, proper, courts conduct a two prong analysis.  First, a federal court must look to the forum state's long-arm statute, in this instance, New York.  Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997).  If the state statute permits the exercise of jurisdiction, courts must then decide whether personal jurisdiction comports with the requisites of the Due Process Clause of the Fourteenth Amendment of the federal Constitution.  Id.; see also Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005); Tianbo Huang v. iTV Media, Inc., 13-3439, 2014 WL 1377500, *3 (E.D.N.Y. Apr. 8, 2014).  A plaintiff, in the pre-discovery phase, may defeat a motion challenging jurisdiction by pleading "in good faith . . . legally sufficient allegations of jurisdiction."  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

### i. **Personal Jurisdiction Is Lacking Under New York's Long-Arm Statute**

There are two bases for personal jurisdiction over non-domiciliary defendants under New York law:  Civil Practice and Legal Rule ("CPLR") § 301 provides a basis for general personal jurisdiction, while CPLR § 302 provides bases for specific, long-arm jurisdiction.  § 302(a) states that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state (except defamation); or

3. commits a tortious act without the state causing injury within the state (except defamation), if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

CPLR § 302(a).

Here, Plaintiff appears to plead personal jurisdiction is appropriate under all three subsection of § 302(a).  (Compl. ¶ 10; Pl.'s Mem. in Opp'n 14.)

11

### 1. Jurisdiction Is Lacking Under § 302(a)(1)

Under § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1). To establish whether this basis of jurisdiction has been established, courts are required to determine "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007).

CPLR § 302(a)(1) provides no specific guidelines as to what constitutes a transaction of business for purposes of establishing specific personal jurisdiction over non-domiciliary defendants. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 456 (1965). This Circuit has acknowledged, however, that "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) (citing Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508 (2007)). Put

another way, it is "the quality of the defendants' New York contacts that is the primary consideration." Fischbarg v. Doucet, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007).

Second Circuit case law further counsels that courts should consider the "totality of a defendant's conduct" when determining whether a non-domiciliary defendant has transacted business in New York, including "whether [he] has an on-going contractual relationship with a New York corporation[, . . .] whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant . . . visited New York for the purpose of meeting with parties to the contract regarding the relationship." Pincione v. D'Alfonso, 506 F. App'x 22, 24-25 (2d Cir. 2012) (quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004)) (internal citations omitted). Courts may also consider choice of law clauses and whether the contract requires parties to send notices and payments into the forum state. See Sunward Elecs., 362 F.3d at 22. Telephone calls and other communications to New York, standing on their own, however, do not necessarily confer jurisdiction. See Carlson v. Cuevas, 932 F. Supp. 76, 78-79 (S.D.N.Y. 1996). Such communications must be evaluated with an eye towards whether a defendant has

"purposefully availed himself of the privilege of conducting activities in New York and thereby invoked the benefits and protections of its laws[.]" Thorsen v. Sons of Norway, No. 13-CV-2572, 2014 WL 507466, *5 (E.D.N.Y. Feb. 6, 2014) (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506, 508-09 (1970)).

The Plaintiff alleges that personal jurisdiction may be exercised by this Court over all defendants under § 302(a)(1).

### a. Personal Jurisdiction Over Simpson and Atkinson

Personal jurisdiction does not automatically extend to an employee from the corporation which employees him. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13 (1984); see also Weiner v. Lex, No. 13-CV-1511, 2014 WL 325698, *4 (S.D.N.Y. Jan. 23, 2014)("[i]t is well established that individual . . . employees of a corporation are not automatically subject to personal jurisdiction in New York because a court can exercise jurisdiction over the corporation") (quoting In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 681 (2d Cir. 2013)) (internal citation marks omitted); Thorsen, 2014 WL 507466 at

14

*12 ("individual officers, directors, and other agents of a corporation (or organization) are not automatically subject to a court's jurisdiction simply because the Court may have jurisdiction over the corporation").  Non-domiciliary corporate officers can still be subject to personal jurisdiction if it can be shown that the corporation transacted business in New York as the officer's agent.  Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 44 (1988) (stating that a plaintiff must show that the corporation was controlled by the corporate officer and that the corporation engaged in purposeful activities in relation to the transaction for the benefit of and with the knowledge and consent of that corporate officer).  However, at "the heart of this inquiry is whether the out-of-state corporate officers were 'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] ... who played no part in' it."  Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (quoting Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988)).

        The only allegation made in the complaint regarding Simpson and Atkinson is that both were "involved" in the scheme and that they "participated in the preparation and/or submission of invoices to Vista in New York that [they] knew or should have

known were inflated," and that they were "otherwise actively
participating in defrauding Vista."  (Comp. ¶¶ 8-9, 38.)  While
New York courts have found out-of-state corporate officers
liable for corporations' allegedly wrongful actions in some
cases, New York courts have also found claims such as those
alleged in the instant case insufficient.  See, e.g., Nelson A.
Taylor Co., Inc. v. Technology Dynamics Group Inc., 1997 WL
176325, *5 (N.D.N.Y. Apr. 7, 1997) (personal jurisdiction
imputed when defendants were alleged to have negotiations and
signed the agreements in dispute, personally controlled all
transactions, and authored virtually all correspondence);
Sterling Interiors Group, Inc. v. Haworth, No. 94-CV-9216, 1996
WL 426379, *15 (S.D.N.Y. July 30, 1996) (finding that
participation in a scheme and the belief that individual, non-
shareholding defendants were "believed to be or to have been
fully aware of . . . condoned and directed the perpetuation of
the scheme" were insufficient to establish personal
jurisdiction).

        Plaintiff's complaint relies solely on the fact that
Simpson and Atkinson physically prepared and sent invoices, and
the availability of information to Simpson as comptroller, to
establish misconduct.  (Compl. ¶¶ 8-9; Pl.'s Mem. in Opp'n 13.)
Unlike in cases where courts have imputed personal jurisdiction

to individual defendants, neither Simpson nor Atkinson

negotiated or even signed or were parties to the agreements

cited in the complaint as linked to the transaction, nor do

Plaintiff's pleadings sufficiently establish that either Simpson

or Atkinson exercised sufficient control over the transactions

complained of to reasonably consider them "primary actors"

rather than lower-level employees.  Plaintiff's opposition

papers do not lend any additional strength to the complaint's

claims.[2]

Without some additional facts as to specific acts

committed by Simpson and Atkinson to intentionally further a

fraudulent scheme, Plaintiff's vague allegations of fraud are

insufficient to hold Simpson and Atkinson accountable in their

individual capacities.  As such, this Court declines to exercise

personal jurisdiction over Simpson and Atkinson.[3]

---

[2] Plaintiff states in its opposition papers that "Simpson and Atkinson would like the Court to believe that they had only a ministerial role in executing Defendants' fraudulent scheme, but they in fact played a substantial, deliberate and central role . . . . Both Simpson and Atkinson admit that they were personally and intimately involved in preparing and submitting invoices to Vista." (Pl.'s Mem. in Opp'n 12-13 (citing Simpson Aff. ¶¶ 10-11 and Atkinson Aff. ¶¶ 9-11.))  The mere fact that Simpson and Atkinson admit to physically preparing and sending invoices does not lend any additional credibility to the notion that Simpson and Atkinson were intentionally involved in or exercised sufficient control over either Entity Defendant in relation to a scheme to defraud Vista.

[3] Plaintiff cites to magistrate opinion Bus. Yellow Pages v. Wells, No. 93-CV-3856, 1995 WL 386500, (S.D.N.Y.  June 29, 1995) from this year to support its argument that the intentional sending of fraudulent invoices constitutes "transacting of business in New York."  (Pl.'s Mem. in Opp'n 13.)  Plaintiff's reliance on this case does not sway the Court's analysis,

### b. Personal Jurisdiction Over Champion

The Court declines to exercise personal jurisdiction over Champion for similar reasons.  Champion, like Simpson and Atkinson, was not a party to either the Credit Agreement or the Guaranty Agreement and, while Champion is alleged to have sent invoices to Vista, these invoices, without any specific facts regarding how they are fraudulent, prove an insufficient basis for the exercise of jurisdiction.

Plaintiff further contends that Champion is BC&G's alter ego and asserts that the forum selection clause contained in the Credit Agreement and Continuing Guaranty should be

---

however, as Vista has not plead sufficient facts to support the imputation and exercise of personal jurisdiction over these individual employees. Additionally, the facts of Wells differ greatly from the facts in the instant case.  In Wells, Plaintiff managed a directory that listed businesses for a fee.  Each year Plaintiff mailed renewal notices and invoices to seek payment for the customer to be listed in the directory the following year. Defendants were two individuals and a Canadian corporation of which one of the individual defendants was an officer.  None of the Defendants published a directory of any kind, but Defendants took names and addresses from the Plaintiff's listing and mailed counterfeit invoices to Plaintiff's customers that looked strikingly similar to Plaintiff's.  The fact that defendants did not manage a directory and mailed invoices directly to decoy businesses established by Plaintiff to catch exactly the kind of fraud perpetrated by defendants was damning evidence in Plaintiff's favor.  See generally Wells, 1995 WL 386500. In the instant case, Plaintiff has failed to allege sufficient facts to support an inference in its favor that Simpson and Atkinson are anything but employees carrying out their regular duties of sending invoices to customers for their employer.  See also Sterling Interiors Grp., 1996 WL 426379 at *15 ("Neither defendant is alleged to be a shareholder of the corporation, so the corporation cannot be viewed as having acted on their behalf, for their benefit.  To the contrary, those defendants were agents of the corporation.  Thus, the Kreutter decision does not authorize the Court to exert long arm jurisdiction over them pursuant to section 302(a)(1).").

enforced against Champion as a "closely related" non-signatory. (Compl. ¶¶ 3-4, 26; Pl.'s Mem. in Opp'n 9.)  To support this allegation, Plaintiff cites to the fact that Champion benefited from the credit Vista extended to BC&G through the Credit Agreement, in connection with which the Oral Agreement is alleged to have been formed.  (Compl. ¶¶ 14-16; Pl.'s Mem. in Opp'n 9-10.)  Plaintiff asserts, upon information and belief, that Champion is a subsidiary of BC&G, and in their dealings with Vista, the Entity Defendants operated as a single enterprise, making enforcement of the forum-selection clause in the Credit Agreement foreseeable and appropriate.

In a diversity case, courts must apply the choice of law rules of the forum to determine which law governs alter ego or piercing the corporate veil analysis.  American Fuel Corp. v. Utah Energy Development Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997) (citing Wm. Passalacqua Builders v. Resnick Developers S., Inc., 933 F.2d 131, 137 (2d Cir. 1991).  Under New York's choice of law principles, "the law of the state of incorporation determines when the corporate form will be disregarded." Fillmore East BS Fin. Subsidiary LLC v. Capmark Bank, No. 11-CV-4491, 2013 U.S. Dist. LEXIS 47608, *31 (S.D.N.Y. Mar. 30, 2013) (internal quotations omitted).  However, where the parties have agreed to the application of the forum law, their consent

19

concludes the choice of law inquiry.  American Fuel Corp, 122

F.3d at 134.


In this case, while the Credit Agreement contains a

clear statement that "New York law shall apply," Champion has

not signed the Credit Agreement and thus is not subject to the

provision.  Arguably, whether the choice of law provision

contained within the Credit Agreement does apply is predicated

upon whether Champion is an alter ego of BC&G.  However, under

either Ohio or New York veil-piercing precedent, Vista's claims

must fail.


Under Ohio law, a court may pierce the corporate veil

"when (1) control over the corporation by those to be held

liable was so complete that the corporation has no separate

mind, will, or existence of its own, (2) control over the

corporation by those to be held liable was exercised in such a

manner as to commit fraud, [an illegal act, or a similarly

unlawful act] against the person seeking to disregard the

corporate entity, and (3) injury or unjust loss resulted to the

plaintiff from such control and wrong."  See Minno v. Pro-Fab,

Inc., 905 N.E.2d 613, 617 n. 1 (Ohio 2009) (citing to Belvedere

Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. 617

N.E.2d 1075 (Ohio 1993)).  This test has also been applied to

ascertain whether a parent corporation can be liable for its subsidiary's misconduct. Minno, 905 N.E.2d at 617. However, a Plaintiff cannot pierce the corporate veil of one corporation to reach another corporation in which it holds no ownership interest, even if the two corporations are controlled by the same, or substantially the same, owners. Id.

Vista alleges that Champion is a subsidiary of BC&G, but provides little factual support for the allegation save for BC&G's extension of its credit to Champion (and subsequent execution of the Guaranty Agreement on its behalf) and Champion's alleged participation in the forming of the Oral Agreement. (Compl. ¶¶ 14-15). In fact, Vista's allegation that Champion is a subsidiary appears to be directly contradicted by Vista's President's affidavit, in which he states: "an account was established at Vista in BC&G's name and for the use of a subsidiary which became [Champion] . . . [and] that the subsidiary that became Champion was a startup entity with no credit history, no significant revenue or business, and so it could not have established an account without the use of BC&G's credit." (Pacifico Aff. ¶ 5.) Stating that Champion once used to be a subsidiary of BC&G which then became its own business does not support a theory of alter ego or close-relatedness under Ohio law. In fact, plainly read, Pacifico's statement

stands for exactly the opposite proposition – that Champion once used to be a subsidiary, but has since become a separate corporate entity and that such separation occurred prior to the actions at issue in this case.  Vista's allegation that Champion is "upon information and belief a shell company" is conclusory and, taken with Pacifico's statement, does not meet Plaintiff's pleading burden.  (See Compl. ¶ 3-4.)  As a result, Vista's assertion of personal jurisdiction over Champion on alter ego grounds must fail.[4]

Vista's alter ego allegations would also fail under New York law.  Alter egos are treated as one entity for purposes of jurisdiction and liability.  Passalacqua, 933 F.2d at 143.  Ten factors may be considered in determining the sufficiency of parent domination over the subsidiary: (1) absence of corporate formalities and paraphernalia; (2) inadequate capitalization; (3) movement of funds for personal rather than corporate purposes; (4) overlap in ownership, officers, directors and personnel; (5) common office space and contact information; (6) limited amount of business discretion exercised by the subsidiary; (7) lack of arms' length dealings between the parent and the subsidiary; (8) failure to treat the relevant entities

---

[4] This is further supported by Defendants' submissions, which aver that Champion and BC&G are separate entities and neither has an ownership interest in the other.  (Def.'s Mem. Supp. Mot. to Dismiss 15; Weithman Aff. ¶¶ 35-40.)

as independent profit centers; (9) payment or guarantee of the subsidiary's debts by the parent; and (10) use by the parent of the subsidiary's property as if the property were owned by the parent. See In re Saba Enterprises, Inc., 421 B.R. 626, 650 (Bankr. S.D.N.Y. 2009)(citing Passalacqua, 933 F.2d at 139). The analysis of parent domination is a fact-intensive inquiry, and no one factor listed above is dispositive.   Id.

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'"  Munoz-Nagel v. Guess, Inc., No. 12-CV-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)) and Prince v. Madison Square Guarden, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); see also Williams v. Calderoni, No. 11-CV-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012).

Here, Plaintiff's sole factual allegations in support of its claim of alter ego is the benefit Champion received by BC&G's extension of its credit to Champion (and subsequent execution of the Guaranty Agreement on its behalf) and

23

Champion's participation in the forming of the Oral Agreement.
(Compl. ¶¶ 14-15)  At most, Plaintiff has solidly satisfied one
of ten factors in alleging – and substantiating with the
submission of the Corporate Agreement, Guaranty Agreement and
Continuing Guaranty – that the 'parent,' in this case BC&G
guaranteed Champions debts.  Vista has also alleged overlap in
personnel, but without sufficient clarity.  For example, Vista
states in its complaint, upon information and belief, that
Simpson and Atkinson were employed by the Entity Defendants.
(Compl. ¶¶ 8-9).  No other corroborative facts are given save
for the mailing of invoices, all of which appear to have been on
Champion letterhead.  (See generally Compl. Ex. 2.)  Of note is
Atkinson's affidavit, which avers that she has never been an
employee of BC&G, never done any work for BC&G, has always been
paid by Champion.  (Atkinson Aff. ¶ 5.)[5]

        Without additional, non-conclusory factual allegations
as to corporate structure and the relationship between the

---

[5] Similarly, Plaintiff's assertions regarding the closely related nature of
the Entity Defendants must fail as they, too, rely on the same set of vague
and conclusory facts.  Furthermore, Plaintiff's comparisons to LaRoss
Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147 (S.D.N.Y. 2012), In re
Optimal U.S. Litig., 813 F. Supp. 2d 351 (S.D.N.Y 2011) and Leviton Mfg. Co.
v. Reeve, 942 F. Supp. 2d 244 (E.D.N.Y. 2013) do not assist their claim.  In
contrast to LaRoss Partners, Plaintiff does not sufficiently allege that
Champion is a subsidiary of BC&G.  Neither has Plaintiff sufficiently alleged
that champion was hired out by BC&G to carry out any contractual obligation
of BC&G, as in In re Optimal, or sufficiently alleged that Champion's
interest are "completely derivative of or directly related to" BC&G's
interests, as in Leviton.

Entity Defendants, however, the extension of liability to Champion under the Credit Agreement – and its venue provision – is not sufficiently supported.

### c. Personal Jurisdiction Over Weithman

Additionally, the complaint fails to adequately establish personal jurisdiction over Weithman.  The complaint alleges that in his capacity as a guarantor and by virtue of signing the Continuing Guaranty, Weithman should be subject to personal jurisdiction in New York.  (Compl. ¶¶ 3, 7.)

A guaranty is "the promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable in the first instance . . . . It is an obligation to answer for the debt of another."  See Terwilliger v. Terwilliger, 206 F.3d 240, 246 (2d Cir. 2000) (citing 63 N.Y. Jur. 2d Guaranty and Suretyship § 2 (1987)); see also Weissman v. Sinorm Deli, Inc., 88 N.Y.2d 437, 646 N.Y.S.2d 308, 669 N.E.2d 242, 246 (1996) ("A guaranty ... is a contract of secondary liability ... [A] guarantor will be required to make payment only when the primary obligor has first defaulted.").

Weithman's guaranty is as a guaranty of payment of monies owed pursuant to the Credit Agreement, and not of performance.  The obligation to pay an outstanding debt is of a different character entirely than that of an obligation to be held accountable for a difference in money instigated by fraud. As such, while Weithman could perhaps expect to be haled to New York to answer for a default in payments under the Credit, Guaranty Agreement, and Continuing Guaranty, that expectation does not extend to claims of fraud.  The complaint makes no allegation, apart from its fraud allegations, of money being owed in violation of the Credit, Guaranty Agreement, and Continuing Guaranty.

Additionally, Weithman cannot reasonably be held to meet the "primary actor" standard.  Control cannot be shown based merely upon a Weithman's title or position within the corporation, or upon conclusory allegations that he controlled Champion or BC&G.  See Pilates, Inc. v. Current Concepts, 1996 WL 599654, at *3 (S.D.N.Y. Oct.18, 1996); see also Kinetic Instruments v. Lares, 802 F.Supp. 976, 984–85 (S.D.N.Y.1992) ("[t]he fact that [the defendant] is the President and majority shareholder of [the corporation] does not necessarily mean that the corporation will be considered his agent").  Plaintiff's allegation that Weithman was the

"architect of the misconduct that Vista complains about," or that he "used false pretenses to obtain an extension of credit" and "contacted Vista's suppliers and without notice to Vista established relationships with them, to Vista's detriment and damage" are too vague to be credited for the purposes of establishing personal jurisdiction.  (Compl. ¶¶ 7, 38.)

### d. Personal Jurisdiction Over BC&G

BC&G, in contrast to Simpson, Atkinson, Weithman (in his individual capacity), and Champion, did sign the Credit Agreement, which contains a valid forum selection clause which constitutes a "significant contact" with the forum under § 302(a)(1).  See Uniroyal, Inc. v. Heller, 65 F.R.D. 83, 91 (S.D.N.Y. 1974).  Generally, a choice of law provision in a contract alone is insufficient to confer jurisdiction and does not constitute a voluntary submission to personal jurisdiction. CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 366-67 (2d Cir. 1986).  However, because the Credit Application contains specific language regarding litigation, stating that "[l]itigation of all kinds arising from transactions subject of this guaranty shall be subject to venue in the state and county of New York, New York," this Court finds that BC&G is subject to jurisdiction, despite the questionable relation between the

Credit Agreement and the events complained of, by consent.  (See Compl. Ex. 2.)

### 2. Jurisdiction Is Lacking Under § 302(a)(2)

Under § 302(a)(2), a court may exercise personal jurisdiction over a non-domiciliary defendant who "commits a tortious act within the state."  CPLR § 302(a)(2).  Physical presence in New York is almost always a prerequisite to jurisdiction under § 302(a)(2).  See Pincione v. D'Alfonso, 506 Fed. App'x 22, 25 (2d Cir. 2012) (declining to revisit Bensusan Rest. holding and affirming that "CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act").  Plaintiff's complaint contains no facts to suggest that Defendants committed any acts, tortious or otherwise, within and while physically present in New York.  (Comp. ¶¶ 12, 26, 33.)  CPLR § 302(a)(2) cannot, therefore, be relied upon to establish personal jurisdiction over any named defendant in this case.

### 3. Jurisdiction Is Lacking Under § 302(a)(3)

Under § 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary defendant who "commits a

tortious act without the state" if that defendant "regularly does or solicits business in the state" or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue" from the act.   CPLR § 302(a)(3). For either § 302(a)(3)(i) or § 302(a)(3)(ii) to apply, "(1) a defendant must have committed a tortious act outside New York, (2) the cause of action must arise from that tortious act, and (3) the act must have caused injury to a person or property within New York." Doe v. Delaware State Police, 939 F. Supp. 2d 313, 325-26 (S.D.N.Y. 2013) (citing LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 713 N.Y.S.2d 304, 735 N.E.2d 883, 886 (2000).

In order to establish jurisdiction under 302(a)(3)(i), a plaintiff must demonstrate one of "four alternative forms of ongoing New York activity by [the] defendant . . . regularly doing business in New York, regularly soliciting business in New York, engaging in a 'persistent course of conduct' in New York, or deriving 'substantial revenue from goods used or consumed or services rendered in New York.'" Delaware State Police, 939 F. Supp. 2d at 326 (internal citations omitted).   Additionally, a plaintiff "must demonstrate more than substantial revenue from sales to a New York entity, they must make some showing that the associated goods are 'used or consumed' in New York." Ball, 902 F.2d at 200.

Under § 302(a)(3)(ii), a plaintiff must demonstrate that a defendant "'expected or should reasonably have expected the [tortious] act to have consequences in [New York],' and that [the] defendant 'derived substantial revenue from interstate or international commerce.'" Delaware State Police, 939 F. Supp. 2d at 326 (citing Pak-Mor, 713 N.Y.S.2d 304, 735 N.E.2d at 886). See Lawson v. Full Tilt Poker Ltd., 930 F. Supp. 2d 476, 484 (S.D.N.Y. 2013) (citing Penguin Grp. (USA) Inc. v. Am. Buddha, 640 F.3d 497, 498-99 (2d Cir. 2011).

Plaintiff argues that, by sending fraudulent invoices to Vista in New York, "Defendants" have fulfilled the requirements of § 302(a)(3) by sending fraudulent invoices to Vista.[6]  (Pl.'s Mem. in Opp'n 13.)  Specifically, Plaintiff argues that personal jurisdiction can attach to both Simpson and Atkinson under each subsection of § 302(a)(3) because (1) their sending of allegedly fraudulent invoices qualify as a "persistent course of conduct" and (2) they knew or should have known that sending fraudulent invoices would have consequences

---

[6] Plaintiff's complaint itself appears to allege jurisdiction under only § 302(a)(1) and § 302(a)(2).  (See Compl. ¶ 10 (making no specific allegation regarding commission of tortious acts 'without' the State of New York).) However, because the complaint points only to § 302 generally, and not specific subsections, and because Plaintiff's make arguments in their later submission in opposition to Defendants' motion to dismiss under § 302(a)(3), the Court will consider whether the application of § 302(a)(3) is proper. (See Pl.'s Mem. in Opp'n 13.)

in New York.  Id.  Plaintiff further alleges that, as "employees and officers of a business engaged in the purchase and resale of packaged food products, it is likely that a substantial portion of their income derives from interstate commerce."  Id.

Plaintiff's arguments must fail as to all defendants. There are insufficient facts alleged to hold Simpson and Atkinson to account for 'regularly soliciting business' or 'engaging in persistent course of conduct' or 'deriving substantial revenue' from New York separate from their employers under § 302(a)(3)(i).  As discussed above, Vista has further failed to supply facts supporting an allegation of fraud with respect to the invoices or why Weithman should be held to account as a guarantor or as an officer of BC&G.  Conclusory, "nonfact-specific jurisdictional allegations" are insufficient without further details, especially when Plaintiff could have included such details in the complaint or appended affidavits. Delaware State Police, 939 F. Supp. 2d at 329 (quoting Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998) and S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010)).  As such, this Court declines to exercise jurisdiction under § 302(a)(3).[7]

---

[7] Additionally, Plaintiff fails to allege sufficient facts to show that associated goods are 'used or consumed' in New York under § 302(a)(3)(i). See Ball, 902 F.2d at 200.  Plaintiff also fails to allege sufficient factual

### ii. Personal Jurisdiction Is Lacking Under the Due Process Clause

When determining whether the exercise of jurisdiction over non-domiciliary defendants comports with the Due Process Clause, courts must determine whether defendants have "minimum contacts" with New York such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. <u>Licci</u>, 732 F.3d at 169.  A court's inquiry must focus on (1) "the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test" and (2) whether the assertion of personal jurisdiction would be reasonable.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985).  When engaging in this analysis, courts consider whether a defendant has committed an act by which they purposefully availed themselves of the privilege of conducting activities within New York and whether the defendant's conduct and connection with New York must be such that they should

matter under § 302(a)(3)(ii) that Defendants derives substantial revenue from interstate or international commerce.  Plaintiff states that "it is likely that a substantial portion of [Defendants'] income derives from interstate commerce," but does not allege any additional facts to support the allegation – evidence of the transaction at issue is not sufficient to establish that Defendants do enough business in New York to derive a substantial portion of their income from the state.  See <u>Delaware State Police</u>, 939 F. Supp. 2d at 330 ("Thus, while 'purchases from companies located in New York can . . . demonstrate regular business dealings with the forum,' . . . those purchases must be of a sufficient amount and regularity to constitute 'ongoing activity' in New York.") (quoting <u>Del Ponte v. Universal City Dev. Partners, Ltd.</u>, No. 07-CV-2360, 2008 WL 169358, *4 (S.D.N.Y. Jan. 16, 2008)).

reasonably expect to litigate here.  See Rudzewicz, 471 U.S. 462, 475 (1985); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171 (2d Cir. 2010).

However, as previously stated, this Court finds that jurisdiction as to BC&G is proper under a minimum contacts analysis because BC&G expressly consented to jurisdiction in New York as a result of executing the Credit Agreement, which contained a clear consent to litigate in New York.[8]  By signing an agreement with such a clause, it is indisputable that BC&G could reasonably expect to litigate in New York on claims having to do with its relationship with Vista.

### B. The Complaint Fails to Allege Sufficient Factual Matter to Survive a Motion to Dismiss As To BC&G

[8] Because the court has found that New York's long-arm statute does not allow the exercise of personal jurisdiction over Simpson, Atkinson, Weithman and Champion, there is no need to conduct a due process analysis for those defendants, though Plaintiff's claims would necessarily fail as Plaintiff does not plead sufficient factual matter to satisfy the minimum contacts analysis.  There is very little nexus between Plaintiff's claims and New York apart from the domicile of the Plaintiff and the mailing of invoices to the Plaintiff.  While the complaint alleges Simpson, Atkinson, and Champion sent invoices to Vista in New York, Plaintiff pleadings lack the requisite factual specificity to sufficiently allege fraud in connection with their mailing.  Neither Simpson, Atkinson, nor Champion were party to the written agreements at issue in the litigation and, as such, they could not have reasonably expected to be haled to New York to participate in litigation arising out of those documents.  Weithman signed both the written agreements, but as to the first, only signed in his capacity as President of BC&G and, as to the two guaranties, signed in his individual capacity to guaranty debt of BC&G arising out of the credit extension.  Because a debt separate from the allegation of fraud is not alleged, the Continuing Guaranty cannot reasonably be treated as a document conferring jurisdiction over him in respect to the instant litigation.

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader.  Mills v. Polar Molecular Corp._, 12 F.3d 1170, 1174 (2d Cir. 1993). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 556).  In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief."  Twombly, 550 U.S. at 557 (internal quotation marks omitted).

As part of a 12(b)(6) analysis, the Court may consider outside documents that are integral to the complaint, regardless of whether they are attached to the complaint, so long as the pleader has notice of them or refers to them.  See Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001); Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000); Garcia v. Lewis, No. 05-CV-1153, 2005 WL 1423253, *3 (S.D.N.Y. June 16, 2005) ("[W]hile courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion.").

Plaintiff's complaint sets forward four claims: breach of contract, breach of duty of good faith and fair dealing, breach of guaranty, and fraud.

### i. Plaintiff Does Not Plead Sufficient Facts to Support A Breach of Contract Claim Or Breach of Duty Of Good Faith And Fair Dealing

To state a claim for breach of contract under New York law in federal court, a complaint need only allege: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the

defendant, and (4) damages.  Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (citing to Tagare v. Nynex Network Sys. Co., 921 F.Supp. 1146, 1149 (S.D.N.Y.1996); 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1235 (1990))); see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004).

Plaintiff alleges that BC&G, in conjunction with Champion and Weithman, entered into the Oral Agreement whereby Vista agreed to sell wholesale food products to Champion at once cent above cost and Champion agreed to use Vista as its primary supplier.  (Compl. ¶ 16.)  Plaintiff further alleges that Champion promised and also agreed that while Champion would initially estimate its packaging or non-food costs to be charged to Vista, Champion would later adjust the estimate on past and future orders to reflect actual cost for packaging and that Vista would ultimately be charged for non-food costs at Champion's actual cost.  Id.  The complaint alleges that, over a period of approximately two years, and supply of approximately $800,000 in wholesale food products, "the Defendants intentionally manipulated, exaggerated and inflated their non-food costs," knowing that "their packaging costs were much less than the amount they initially estimated to Vista, and much less than their true cost."  (Compl. ¶¶ 18-19.)

The complaint's allegations of BC&G's involvement in the Oral Agreement seems to be entirely reliant on the imputation of Champion's actions to BC&G on an alter-ego theory.[9] As discussed above, however, Vista fails to allege sufficient factual matter to support a finding that BC&G and Champion are alter egos of one another. Vista's bare assertion that BC&G was party to the Oral Agreement when its complaint alleges concrete conduct and promises relating only to Champion is conclusory and

_____

[9] Such reliance is evidenced by:

1. invoices on Champion letterhead (Compl. Ex. 2.)
2. "The claims against [BC&G] also arise from its transaction of business in New York with Vista . . . in connection with the purchase from Vista of food products and/or the packaging of food products . . ." (Compl. ¶ 6.)
3. "The credit application by [BC&G] was submitted in connection with establishing an account with Vista to purchase wholesale food products." (Compl. ¶ 13.)
4. ". . . the parties entered into an oral contract in which Vista agreed to sell to the [E]ntity Defendants food products at 1 cent above Vista's wholesale item cost and Champion agreed that it would use Vista as its primary supplier. Champion promised and also agreed that while the parties would proceed initially with Champion estimating its packaging or non-food costs to be charged to Vista, the arrangement was that Champion would adjust the estimate on past and future orders to reflect Champion's actual cost for packaging and that Vista would be charged for non-food costs at Champion's actual cost." (Compl. ¶ 16.)
5. "The [E]ntity [D]efendants dishonored the agreement with Vista by tricking Vista into selling them food products at a cost substantially below market rates on the premise that Champion would handle packaging of Vista meals for its customers by passing through to Vista the non-food costs without a markup, and that Champion would source its food products from Vista." (Compl. ¶ 20.)
6. "The [E]ntity [D]efendants also hurt Vista's relationships with its suppliers when Champion thereafter proceeded to circumvent Vista in sourcing product." (Compl. ¶ 22.)
7. ". . . in which BC&G agreed to satisfy Champion's obligations under its agreement with Vista . . . " (Pacifico Aff. ¶ 6)
8. ". . . under Vista's business relationship with Defendants, Champion would charge Vista for packing and shipping services. . ." (Pacifico Aff. ¶ 9)

insufficient to survive a 12(b)(6) analysis.

In its opposition to Defendants' motion to dismiss, Plaintiff further argues that the breach of contract claim is properly brought against BC&G as guarantor of Champion's debts to Vista as established in the Credit Agreement. (Pl. Mem. Supp. Opp'n 16.) The two cases relied upon by Plaintiff found liability for guarantors when there were unpaid or late invoices. See Glenoit Mills v. Style VI, No. 93-CV-5494, 1996 U.S. Dist. LEXIS 9627, *1, *6 (S.D.N.Y. July 9, 1996); Sprague Energy Corp. v. Levco Tech Inc., No. 09-CV-29, 2009 U.S. Dist. LEXIS 39526, *2, *17-18, *40 (D. Conn. May 11, 2009). However, there is no unpaid debt in relation to the Credit Agreement alleged in this case.

Plaintiff's separate claim of breach of duty of good faith and fair dealing must also fail. Implied "in all contracts is a covenant of good faith and fair dealing in the course of contract performance." United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 64 (2d Cir.2004); Dalton v. Educational Testing Serv., 87 N.Y.2d 384, 389, 663 N.E.2d 289, 292, 639 N.Y.S.2d 977, 979 (1995). However, New York law will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing

when it arises from the same allegations as a breach of contract claim.  See Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir.1992) (In New York, breach of the implied duty of good faith and fair dealing "is merely a breach of the underlying contract.") (quoting Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y.1991) (citations omitted); see also Mendez v. Bank of America Home Loans Servicing, LP, 840 F. Supp. 2d 639, 652 (E.D.N.Y. 2014). Because Plaintiff's claim arises out of the same allegations, its breach of duty of good faith and fair dealing must be dismissed as duplicative.

### ii. Plaintiff Does Not Plead Sufficient Facts to Support A Claim of Fraud

To state a claim for fraud under New York law, a plaintiff must demonstrate: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Solow v. Citigroup, Inc., 507 Fed. App'x 81, 83 (2d Cir. 2013) (quoting Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001)).  The plaintiff must state "with particularity the circumstances constituting

fraud." Fed. R. Civ. P. 9(b); see also Vaughn v. Air Line
Pilots, Ass'n, Int'l, 377 F. App'x 88, 90 (2d Cir.
2010)(explaining that fraud claims cannot be based on
speculation or conclusory allegations). Specifically, in order
to plead with sufficient particularity, a plaintiff must "(1)
specify the statements that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when
the statements were made, and (4) explain why the statements
were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir.
2004); see also Lundy v. Catholic Health Sys. of Long Island,
Inc., 711 F.3d 106, 119 (2d Cir. 2013)("[b]are-bones allegations
do not satisfy Rule 9(b)").

Additionally, when plaintiffs allege fraud against
multiple defendants, "the complaint should inform each defendant
of the nature of his alleged participation in the fraud."
Divittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242,
1247 (2d Cir. 1987). Furthermore, plaintiffs must "specifically
plead the circumstances constituting fraud with respect to each
of the Defendants." Clayton's Auto Glass, Inc. v. First Data
Corp., No. 12-CV-5018, 2013 U.S. Dist. LEXIS 141444, at *16
(E.D.N.Y. Sept. 30, 2013). Under New York law, however, when
fraud claims are merely duplicative of breach of contract
claims, they should be dismissed. Coppola v. Applied Elec.

Corp., 228 A.D.2d 41, 732 N.Y.S.2d 402 (1st Dep't 2001); see also
W.B. David & Co., Inc. v. DWA Commc'ns, Inc., No. 02-CV-8479,
2004 WL 369147, *3 (S.D.N.Y. Feb. 26, 2004) (explaining that
courts applying New York law do not "recognize claims that are
essentially contract claims masquerading as claims of fraud")
(internal citations omitted).


        The complaint alleges that Defendants were engaged in
defrauding Vista, but fails to allege any facts specific to BC&G
that do not rely solely on its theory that BC&G should be held
to account for Champion's alleged fraudulent actions.  As stated
above, this Court finds that Plaintiff's have pled insufficient
facts to support an alter ego theory.  Even without such a
finding, however, Plaintiff's have pled insufficient facts to
meet the 9(b) pleading standard by failing to establish a
misrepresentation or omission of material fact.  Plaintiff does
not, for instance provide examples of invoices which include
clear discrepancies, nor does it provide any specific
description or explanation as to why the invoices are inaccurate
and inflated, except noting that "Weithman embarked on a scheme
to defraud Vista on the account between the entities by
representing that its actual non-food costs were 30 cents per
meal."  (Compl. ¶ 37.)  Simply stating that the invoices were

41

inflated is insufficient.[10]

Separately, even if Plaintiff's submissions were factually sufficient to support a fraud claim against BC&G, the claim would nevertheless fail as duplicative of Vista's breach of contract claim.  It is well settled that in order for a fraudulent misrepresentation to be considered separate from a contract, it "must promise to do something other than what is expressly required by the contract."  W.B. David & Co., 2004 WL 369147 at *5 ("The mere fact that Defendants allegedly sent false invoices to the Plaintiffs after the consummation of their agreement is not sufficient to make these alleged 'statements' collateral or extraneous to the agreement between the parties.").[11]

---

[10] Additionally, Plaintiff relies on Anitora Travel, Inc. v. Lapian, 677 F. Supp. 209, 214 (S.D.N.Y. 1988) to argue that each element is adequately established under a standard that "the complaint's fraud allegations must be specific enough to allow the defendant 'a reasonable opportunity to answer the complaint' and must give 'adequate information' to allow the defendant 'to frame a response.'"  (Pl.'s Mem. in Opp'n 20.)  The Second Circuit has in more recent years, however, further clarified the pleading standards under Federal Rule of Civil Procedure 9(b).  See, e.g., Rombach, 355 F.3d at 170; Lundy, 711 F.3d at 119.

[11] Plaintiff's contention that its fraud allegations are not duplicative because they allege misrepresentations of present fact is unpersuasive as the precedent Plaintiff cites focuses almost exclusively on claims of fraudulent inducement.  See, e.g., Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007) ("New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement.") (emphasis added); VTech Holdings Ltd. v. Lucent Technologies, Inc., 172 F. Supp. 2d 435, 439 (S.D.N.Y. 2001) (finding that the plaintiff sufficiently plead fraud because the claim was "based in large part on allegations that it was induced to enter into a contract").

In sum, this Court finds that Plaintiff fails to state a claim against BC&G for breach of contract, breach of implied duty of good faith and fair dealing, and fraud under 12(b)(6). Consequently, Defendants' arguments under 12(b)(3) regarding improper venue need not be examined.

### C. Venue Transfer In Unwarranted

#### i. Defendants Fail To Show Why Plaintiff's Choice of Forum Should Be Disturbed Under § 1404(a)

Putting aside momentarily that this Court finds that Vista has failed to establish personal jurisdiction over Simpson, Atkinson, Weithman, and Champion, and failed to state a claim as to BC&G, it nevertheless is determined that venue transfer is unwarranted.

Under 28 U.S.C. § 1404, a district court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The "threshold question" in a venue transfer motion under § 1404(a)

43

is "whether the action could have been brought in the district
to which transfer is proposed." Arrow Elecs., Inc. v. Ducommun
Inc., 724 F. Supp. 264, 265 (S.D.N.Y. 1989).  Upon determining
whether transfer would be proper to the proposed venue, the
Court then must consider "whether the convenience of the parties
and witnesses and the interest of justice warrant a transfer."
Brockmeyer v. May, No. 98-CV-5521, 1999 WL 191547, at *3
(S.D.N.Y. Apr. 6, 1999).  This balancing and determination of
conveniences is in the "sound discretion of the district court."
Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.,
865 F.2d 513, 520 (2d Cir. 1989).  Generally, however, "[a]
plaintiff's choice of venue is entitled to significant
consideration and will not be disturbed unless other factors
weigh strongly in favor of transfer."  Royal & Sunalliance v.
British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001).


        In determining a motion for transfer, courts look to
and balance a number of factors.  See In re Cuyahoga Equip.
Corp., 980 F.2d 110, 117 (2d Cir. 1992); First City Nat. Bank
and Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989).  Some
of these factors can include: (1) the plaintiff's choice of
forum, (2) the convenience of witnesses, (3) the location of
relevant documents and the relative ease of access to sources of
proof, (4) the convenience of the parties, (4) the convenience

44

and means of the parties, (5) the locus of operative facts, (6) the availability of process to compel attendance of unwilling witnesses, (7) the relative means of the parties, (8) a forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice based on the totality of the circumstances." New York Marine and General Ins. Co. v. Lafarge North America, Inc., 599 F.3d 102 (2010) (citing to D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 105 (2d Cir. 2006)); see also Hershman v. UnumProvident Corp., 658 F. Supp. 2d 598 (2009) (citing to POSVEN, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 404 (S.D.N.Y. 2004) and Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 56-57). Additionally, a valid forum selection clause is a "significant" but not "dispositive" factor. Duro Textiles, LLC v. Ricci, No. 14-CV-705, 2014 WL 641443, *1 (S.D.N.Y. Feb. 18, 2014). Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Indeed, ultimately there is "no rigid formula for balancing these factors and no single one of them is determinative." Hershman, 658 F. Supp. 2d at 601 (quoting Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 459, 561 (S.D.N.Y. 2000).

    The instant case could have been brought in the Northern District of Ohio. Under 28 U.S.C. § 1391(b), "[a] civil action may be brought in—

45

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

§ 1391(b).  As the events described and complained about –

namely the preparation of allegedly fraudulent invoices –

arguably occurred in Ohio, and several of the defendants, at the

time of the events alleged, either residents of Ohio or employed

by Ohio corporations, Vista could have brought the case in Ohio

if it had so chosen.


    Turning the second prong of the transfer inquiry,

Defendants argue that a substantial part of the events or

omissions giving rise to the claim cannot be said to have

occurred as Plaintiff's contention regarding BC&G is simply that

BC&G allegedly sent the Credit Agreement to New York.  (Def.'s

Mem. Supp. Mot. to Dismiss 22.)  Be that as it may, the Supreme

Court has held that "proper application of § 1404(a) requires

that a forum-selection clause be "given controlling weight in

all but the most exceptional cases."  Atlantic Marine Const.

<u>Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas</u>, 134 S. Ct. 568, 579 (2013).  As BC&G did, in fact, consent to litigate claims related to the Credit Agreement in New York, this fact in addition to the due consideration that must be given to Vista's choice of venue, strongly weighs against transfer.  Furthermore, Defendants' argument that, for instance, "the relevant documents and sources of proof are available in Ohio . . . and Champion's invoices are all located in Ohio, not New York" and general reliance on the fact that there is another action in Ohio involving some of the same witnesses, does not sufficiently sway the Court that litigation in New York would be so inconvenient as to disregard the Plaintiff's choice of forum.  (<u>See</u> Def.'s Mem. Supp. Mot. to Dismiss 24).

### ii.  The Ohio Action

Defendants' further argue that this Court should transfer the case to Ohio because a substantially similar case is already ongoing (the "Ohio Action").  (Def.'s Mem. Supp. Mot. to Dismiss 24-25.)  In support of their argument, Defendants' cite to the "first-filed" rule, which states that "in determining the proper venue, where there are two competing lawsuits, the first suit should have priority."  <u>N.Y. Marine &</u>

Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d
Cir. 2010).  Defendants' further argue that this Court would
properly exercise its discretion in transferring the case
because the instant action involves several of the same
plaintiffs against several of the same defendants and involving
substantially similar claims. (Def.'s Mem. Supp. Mot. to Dismiss
24.)

However, Defendants' own assertions about the Ohio
Action defeat their arguments.  Defendants' do not sufficiently
describe how the instant litigation and Ohio Action are
competing lawsuits.  Defendants' also admit that, currently, the
Defendants' named in the instant action do not overlap with
those in the Ohio Action, stating that "Vista already has
alleged counterclaims against BC&G, Champion and Weithman in the
Ohio Action only to voluntarily dismiss those claims later."
(Def.'s Mem. Supp. Mot. to Dismiss 23.)  Defendants' do not,
however, explain whether the counterclaims alleged in the Ohio
Action have any bearing or relation to the claims alleged in the
instant action.

Plaintiff, by contrast, provides explanation to
support its contention that the two actions are unrelated.
Plaintiff asserts that the Ohio Action is "based on the

departure of Champion's purported former CEO, Matthew Gibson, in February 2013, and alleges that Gibson misappropriated Champion's confidential information and provided it to Vista." (Pl.'s Mem. in Opp'n 24.)  Plaintiff further explains that "Vista filed, and then voluntarily dismissed, counterclaims in the Ohio Action . . . [which] were based on Champion's conduct after the termination of its business relationship with Vista. In particular, Vista asserted defamation related claims against Champion based upon statements made by Champion to Vista's customers, state officials, in which Champion claimed that Vista had stolen its property or misused its trade secrets.  None of the claims asserted by Vista in this action were asserted as counterclaims in the Ohio Action."  (Pacifico Aff. ¶¶ 20-21.)

Without more facts and explanation from Defendants supporting their argument that the instant litigation and the Ohio Action are competing actions, the existence of the Ohio Action cannot appropriately serve as a basis for transfer.

**Conclusion**

Based upon the facts and conclusions of law set forth above, Plaintiff's motion to remand is denied.  Defendants' motions to dismiss the complaint is granted and Defendants' motion to transfer venue is denied.

It is so ordered.


Dated:      New York, New York
            August 4 , 2014

_____
Robert W. Sweet, U.S.D.J.