UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

VISTA FOOD EXCHANGE, INC.,

                    Plaintiff,            14 Civ. 804

     -against-                            OPINION

CHAMPION FOODSERVICE, LLC, et al.,

               Defendants.

-------------------------------------X

A P P E A R A N C E S:


          Attorneys for Plaintiff

          JONATHAN C. SCOTT, P.C.
          100 Highland Park Village, Suite 200
          Highland Park, TX 75205
          By:  Jonathan Cory Scott, Esq.


          Attorneys for Defendants

          BAILEY & OROZCO, L.L.C.
          744 Broad Street
          Newark, NJ 07102
          By:  Michael Andrew Orozco, Esq.

**Sweet, D.J.**


Defendants BC&G Weithman Construction Co., Inc.

("BC&G") Champion Foodservice, LLC ("Champion"), Tyrone Weithman

("Weithman") and Ashley Simpson ("Simpson") (collectively, the

"Defendants") have moved pursuant to Rules 12(b)(2) and 12(b)(6)

of the Federal Rules of Civil Procedure to dismiss the Amended

Complaint of plaintiff Vista Food Exchange, Inc. ("Vista" or the

"Plaintiff") alleging (1) breach of contract against BC&G, (2)

breach of contract against Champion, (3) breach of guaranty

against Weithman, (4) tortious interference with contract

against Champion, (5) money had and received against Champion

and BC&G, (6) unjust enrichment against BC&G, Champion and

Weithman, and (7) fraud against all the Defendants. Vista has

also moved for jurisdictional discovery. Based on the facts and

conclusions set forth below, the Defendants' motion is granted,

the Amended Complaint is dismissed with prejudice and costs, and

the Plaintiff's motion for jurisdictional discovery is denied.


**Prior Proceedings**

1

This case is an outgrowth of Champion Foodservice, LLC v. Vista Food Exchange, Inc. et al., No. 13 Civ. 1195, a civil litigation before the Honorable Sara Lioi of the United States District Court for the Northern District of Ohio (the "Ohio Action"), in which Champion brought claims against Vista and two of its employees for misappropriation of Champion's trade secrets, conversion, fraud, conspiracy, breach of fiduciary duty, and spoliation of evidence. Champion alleged that its former President, Matthew Gibson, worked on behalf of Vista while Champion employed him, that Gibson unlawfully took Champion's trade secrets and business information with him to Vista, and that Vista and Gibson used Champion's trade secrets and confidential business information to wrongfully compete against Champion in Ohio and secure a contract from one of Champion's best customers.  The docket of the Ohio Action is nearing its 500th entry, and as the parties remain in discovery, the case shows no signs of slowing. In addition, Gibson and Simpson are engaged in custody litigation in Michigan.

The instant action began on January 10, 2014, when Vista filed its original Complaint in the Supreme Court of the State of New York against Defendants Champion, BC&G, Weithman,

2

Simpson, and Atkinson. Defendants removed the case to this Court
on February 7, 2014. Vista responded with a motion to remand and
Defendants moved for dismissal based on the lack of personal
jurisdiction and failure to state a claim.

By an August 4, 2014 Opinion (the "August Opinion"),
Vista's motion to remand was denied, and the Defendants' motion
to dismiss was granted.  Vista Food Exchange, Inc. v. Champion
Foodservice, L.L.C., No. 14 Civ. 804, 2014 WL 3857053 (S.D.N.Y.
Aug. 5, 2014).  Judgment was thereafter issued.

By an opinion on November 3, 2014 (the "November
Opinion"), Vista's request to alter or amend the judgment was
denied but Vista was granted leave to amend its Complaint.  The
Court stated that "defendants' opposition constitutes fair
warning to the Plaintiff that could give rise to sanctions
should grounds for the Defendants' opposition be established."
Vista Food Exchange, Inc. v. Champion Foodservice, L.L.C., No.
14 Civ. 804, 2014 WL 5557910 (S.D.N.Y. Nov. 3, 2014).

Vista filed its Amended Complaint on December 5, 2014
(Dkt. No. 29), and Defendants responded with the instant motion

3

to dismiss under Rules 12(b)(2) and 12(b)(6).  (Dkt. No. 31.)
Vista moved for a Motion for Jurisdictional Discovery and for
Continuance of Motion to Dismiss (Dkt. No. 35, the "Discovery
Motion").

   The motions were heard and marked fully submitted on
February 11, 2015.

## Background

   The facts underlying the dispute at issue in this case were
laid out in detail in the August Opinion, Vista Food, 2014 WL
3857053 at *1-3, familiarity with which is assumed.  As to the
jurisdictional questions at issue here, the Complaint and
exhibits indicate the following:

   BC&G and Champion are both organized in Ohio and have their
principal place of business there. (AC ¶¶ 4, 6; Affidavit of
Tyrone Weithman (the "Weithman Aff."), Dkt. No. 31-5, ¶¶ 5, 6.)
Although Vista is based in New York (AC ¶ 3), BC&G has never
bought or sold any products or services to Vista or any other
New York-based company.  (Weithman Aff. ¶ 30-32.)  BC&G's only

4

contact with Vista or with New York is the Credit Application,
in which it applied for an account with Vista where it could
purchase wholesale food (AC ¶ 16; Weithman Aff. ¶ 33), several
orders of food products from Vista (AC ¶ 22; Orders, Dkt. Nos.
24-5 & 24-8), and an alleged oral contract with Vista and
Champion where Vista agreed to sell food products to BC&G at a
discounted price in exchange for BC&G's agreement to purchase
food from Vista exclusively.  (AC ¶ 19.)  The Credit Agreement
included a choice of law provision specifying that New York law
would apply and a forum provision specifying that any litigation
related to the agreement would take place in Manhattan.  (AC ¶
17, Credit Agreement, Dkt. No. 31-10.)

      As to Champion, since February 2012, the company has had
only one supplier based in New York other than Vista. Champion
purchased two online orders from Worldlabel.com in Peekskill,
New York, in August 2012. (Affidavit of Linda Atkinson (the
"Atkinson Aff."), Dkt. No. 31-5, ¶ 13.)  Champion has never had
any customer in New York other than Vista. (Weithman Aff. ¶ 26;
Atkinson Aff. ¶ 14; Affidavit of Ashley Simpson (the "Simpson
Aff.") Dkt. No. 31-9, ¶ 15.)  Champion never shipped any
products to New York or provided any services to any entity
based in New York.  Champion's only contact with Vista in New

York related to sending invoices there. (Weithman Aff. ¶¶ 27-29; Invoices, Dkt. No. 29-10.)

Defendant Tyrone Weithman, the President of both Champion and BC&G, is a citizen and resident of Ohio. He owns no property in New York and has never visited the state. (Weithman Aff. ¶¶ 3, 19, 20.) While working for Champion, Weithman spoke on the telephone with one Vista employee in New York on one occasion. He may have received one e-mail from a Vista employee in New York on one occasion, although he has never sent any e-mails to any Vista employee in New York. (Id. ¶¶ 21, 22.) Weithman executed a Continuing Guaranty on June 20, 2012, personally guaranteeing all debts to Vista owed by BC&G and Champion. (AC. ¶ 43; Weithman Aff. ¶ 34.) That document also contains New York choice of law and forum provisions. (Continuing Guaranty, Dkt. No. 29-8.)

Defendant Ashley Simpson is a citizen and resident of Michigan. She owns no property in New York and has never traveled to New York for business. (Simpson Aff. ¶¶ 3, 12-14.) She did visit a friend in New York in 2009, but the trip had no business purpose. (See id. ¶ 14.) While working for Champion, Simpson sent invoices for payment, either via e-mail or via

United States mail, to Vista employees in California. (Id. ¶
10.)


**Applicable Standard**


As the plaintiff, Vista bears the burden of demonstrating
personal jurisdiction over each defendant. Troma Entm't, Inc. v.
Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013);
Vista Food Exchange, Inc. v. Champion Foodservice, L.L.C., No.
14 Civ. 804, 2014 WL 3857053, at *4 (S.D.N.Y. Aug. 5, 2014).
Because a motion to dismiss for lack of personal jurisdiction
"is inherently a matter requiring the resolution of factual
issues outside of the pleadings . . . all pertinent
documentation submitted by the parties may be considered in
deciding the motion." Pilates, Inc. v. Pilates Inst., 891 F.
Supp. 175, 178 n.2 (S.D.N.Y. 1995) (internal quotes omitted). It
is therefore proper for the Court to consider the parties'
affidavits. See Woods v. Pettine, No. 13 Civ. 290 (PGG), 2014 WL
292363, at *3 (S.D.N.Y. Jan. 27, 2014).

In analyzing personal jurisdiction, courts look to the forum-state's long-arm statute and to the Due Process Clause. MacDermid, Inc. v. Canciani, 525 F. App'x 8, 10 (2d Cir. 2013). Vista pleads that personal jurisdiction is established under New York's long-arm statute for non-domiciliaries, N.Y. C.P.L.R. 302(a)(1), which covers parties who transact business within the state, and N.Y. C.P.L.R. 302(a)(3), which covers, inter alia, parties who commit tortious acts outside New York that cause injury within it, where a party "regularly does or solicits business, or engages in any other persistent course of conduct" in New York.

Section 302(a)(1) requires a determination of "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action arises from such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007); accord. Vista Food, 2014 WL 3857053, at *5. The Second Circuit has outlined four factors that are important in determining whether an out-of-state defendant has transacted business in New York. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004). They are: 1) whether the defendant has an ongoing contractual relationship with a New York

corporation, 2) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, 3) the existence and contents of any choice of law clause in the contract, and 4) whether the contract requires a the defendant to send notices or payments into New York or subjects the defendant to supervision by a New York corporation. See id.; accord Vista Food, 2014 WL 3857053, at *5.

Under Section 302(a)(3)(i), a party can be subject to long-arm jurisdiction for a tort committed outside New York that does damage within the state, if the party "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." This limitation is "more stringent than any constitutional requirement," Ingrahm v. Carroll, 90 N.Y.2d 592, 597 (1997) and requires a showing of contacts somewhere between the large quantity required for general jurisdiction under N.Y. C.P.L.R. 301 and the "one shot" single business transaction that can satisfy Section 302(a)(1). Id. In cases involving corporate officers, personal

jurisdiction over the corporation for a tortious act does not
necessarily grant jurisdiction over its employees; in order to
show jurisdiction over an out-of-state officer for a
corporation's actions, a plaintiff must show that the officer is
a "primary actor[] in the transaction in New York" and not
merely "some corporate employee . . . who played no part" in the
allegedly tortious act.  Retail Software Servs., Inc. v.
Lashlee, 854 F.2d 18, 22 (2d Cir. 1988); Vista Food, 2014 WL
3857053, at *6.

**Jurisdiction Over Simpson is Lacking**

Vista has asserted jurisdiction over Simpson under
§ 302(a)3 because she mailed allegedly fraudulent invoices to
Vista in New York and was a primary actor in the fraud alleged
in the Amended Complaint, the only cause of action in which she
is named. (AC ¶¶ 91-99; Pl.'s Opp. Br., Dkt. No. 36, at 5-6).

Simpson had no contractual relationship with Vista or
any other New York entity, did not negotiate or execute any
contract in New York, and did not travel to New York on business
of any kind (Simpson Aff. ¶ 13-15). Vista's only averments about

10

Simpson are that she was employed by BC&G as its comptroller, she worked on Champion projects, was compensated by BC&G, created a pricing spreadsheet, "embarked on a scheme to defraud Vista," and formed Champion to serve as a vehicle for fraud. (AC ¶¶ 8, 32, 51, 92, 93.) These allegations are conclusory or made on information and belief (AC ¶¶ 8, 32, 51, 92, 93), and do not establish that Simpson exercised sufficient control over the transactions at issue to be considered a primary actor.  See Vista Food, 2014 WL 3857053, at *6-7; see also Sterling Interiors Group, Inc. v. Haworth, No. 94-CV-9216, 1996 WL 426379, at *15 (S.D.N.Y. July 30, 1996). Vista's primary allegation of culpable conduct against Simpson is that she created a pricing spreadsheet containing evidence of fraud, but Vista pleads that she did so "at the direction of Tyrone Weithman." (AC ¶ 51.)  Allegations that she prepared and sent fraudulent invoices also fail to place Simpson in a leading role; as discussed in the August Opinion, "The mere fact that Simpson . . . admit[s] to physically preparing and sending invoices does not lend any additional credibility to the notion that Simpson . . . [was] intentionally involved in or exercised sufficient control . . . in relation to a scheme to defraud Vista." Vista Food, 2014 WL 3857053 at *7 n.2.  The Complaint

11

therefore falls far short of establishing Simpson as a primary actor.

Vista additionally alleges that Simpson is subject to jurisdiction because she sent fraudulent invoices into New York. However, the cases it relies on are inapplicable, as they involve defendants who derived substantial revenue from their practices, which Simpson did not.  See In re Med-Atlantic Petroleum Corp., 233 B.R. 644, 660 (Bankr. S.D.N.Y. 1999); Kelly v. MD Buyline, Inc., 2 F. Supp.2d 420, 438 (S.D.N.Y. 1998). Vista finally argues that "the intentional sending of fraudulent invoices to a recipient in New York" constitutes transacting business in New York, but this Court has already rejected this argument and the case upon which it relies. Vista Food, 2014 WL 3857053, at *7 n.3.

Vista has failed to establish personal jurisdiction over Simpson.

**Jurisdiction Over Weithman is Lacking**

12

Jurisdiction is similarly lacking over Weithman, as he has not transacted business in New York. There is no ongoing contractual relationship between Weithman and a New York company – although Weithman signed the Continuing Guaranty, one contract is insufficient to establish an ongoing contractual relationship. Mortg. Funding Corp. v. Boyer Lake Pointe, LC, 379 F. Supp. 2d 282, 287 (E.D.N.Y. 2005). Similarly, Weithman never visited New York for any purpose, and there were no contractual requirements that he send notices or payments to New York.

As to the third Sunward factor — what choice-of-law clause appears in a contract — while the Continuing Guaranty states that New York law shall apply, it has been previously held that the Continuing Guaranty is only "a guaranty of payment of monies owed pursuant to the Credit Agreement, and not of performance." Vista Food, 2014 WL 3857053, at *10. Vista's pleading "makes no allegation, apart from its fraud allegations, of money being owed." Id. It has already been held that "[b]ecause a debt separate from the allegation of fraud is not alleged, the Continuing Guaranty cannot reasonably be treated as

a document conferring jurisdiction over [Weithman]." Id. at *13 n.8.

It has also been held already that Weithman cannot be subject to personal jurisdiction under the "primary actor" standard. Id. at *10. Other than those related to the Continuing Guaranty addressed above, Vista's allegations against Weithman are that he is the President of BC&G and Champion; he formed Champion as a vehicle for creating fraudulent invoices; he authorized the sending of invoices based on "fabricated costs;" and he directed Simpson to prepare a spreadsheet supposedly illustrating inflated prices.  (AC ¶¶ 7, 27, 28, 51, 52, 92, 93, 95.) These averments are substantially identical to Vista's prior allegations that Weithman was the "architect" of the alleged misconduct and he "used false pretenses to obtain an extension of credit."  Vista Food, 2014 WL 3857053, at *10. As this Court previously ruled, Vista's allegations are "too vague to be credited for the purposes of establishing personal jurisdiction." Id.  Personal jurisdiction over Weithman is lacking under CPLR § 302(a)(1).

**Jurisdiction Over Champion is Lacking**

14

Applying the same four factor test for determining whether an out-of-state defendant transacted business in New York under § 302(a)(1), jurisdiction over Champion also fails.  Vista alleges that it entered into an oral agreement with Champion, but as established above, one contract is insufficient to establish an ongoing contractual relationship.  Mortg. Funding Corp., 379 F. Supp. 2d at 287.  The Complaint is also silent about where the alleged oral agreement was negotiated.  Courts are "generally loath to uphold jurisdiction under the transaction in New York prong of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." Id. at 287. The record contains no evidence showing that any representative of Champion visited New York for the purpose of the alleged business relationship with Vista. As to the third applicable factor, the alleged oral agreement contained no choice-of-law provision. (See AC ¶¶ 35, 36.)

As to the fourth factor, whether the contract requires a the defendant to send notices or payments into New York or subjects the defendant to supervision by a New York corporation,

15

Champion sent payments to New York, but Vista alleges that the oral agreement required payment only from BC&G. (AC ¶¶ 36, 37, 41.) Vista pleads that all orders "would have to be placed using BC&G's account and credit, with BC&G responsible for payment," and that "Vista's invoices were sent to BC&G, and not Champion, and Vista looked to BC&G, its account-holder, for payment." (AC ¶ 41.)

Vista also claims that Champion is bound by a clause in the Credit Agreement consenting to jurisdiction in New York. (AC ¶ 12.) This argument was previously considered and rejected; the Credit Agreement was between Vista and BC&G, and thus does not bind Champion. See Vista Food, 2014 WL 3857053, at *8. Vista attempts to circumvent this issue by arguing that Chamption is bound by BC&G's consent to jurisdiction as a "closely related party" to BC&G. (AC ¶ 12.) It contends, "[u]pon information and belief," that Champion is "the wholly-owned and controlled instrumentality of BC&G." (AC ¶ 2.) At the same time, Vista pleads that Champion, an LLC, has four Members, none of whom is BC&G. (AC ¶ 6.) A "subsidiary corporation" is one "in which another corporation (i.e. parent) owns at least a majority of the shares, and thus has control." Black's Law Dictionary 1280

(5th ed. 1979). Although Vista makes a number of allegations
that Champion fails to follow corporate formalities and lacks a
business structure separate from BC&G, all are pled on
information and belief. To be sure, [the Federal Rules] "do[]
not prevent a plaintiff from pleading facts alleged upon
information and belief where the facts are peculiarly within the
possession and control of the defendant, or where the belief is
based on factual information that makes the inference of
culpability possible." Arista Records, LLC v. Doe, 604 F.3d
110, 120 (2d Cir. 2010). However, such allegations must be
accompanied by a statement of the facts upon which the belief is
founded." McNaughton v. De Blasio, No. 14 Civ. 221, 2015 WL
468890, at *7 (S.D.N.Y. Feb 4, 2015) (quoting Prince v. Madison
Square Garden, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)). That
factual statement is lacking in Vista's Amended Complaint.
Vista's revised pleading therefore fails to effectively
contradict the Court's previous holding that "Champion once used
to be a subsidiary, but has since become a separate corporate
entity and that such separation occurred prior to the actions at
issue in this case." Vista Food, 2014 WL 3857053, at *8. While
Vista may raise plausible arguments that the first and fourth
Sunward factors exist here, "no one factor is dispositive . . .

17

. and the ultimate determination is based on the totality of the circumstances." Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp, 98 F.3d 25, 29 (2d Cir. 1996). The circumstances here weigh strongly against finding jurisdiction over Champion.

Nor is there any new content in the Amended Complaint that would alter the Court's previous holding that Vista's alter-ego claim fails under Ohio and New York veil-piercing precedent. See Vista Food, 2014 WL 3857053, at *8-9. "Under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded." Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank, No. 11 Civ. 4491, 2013 WL 1294519, at *10 (S.D.N.Y. Mar. 30, 2013) (internal quotations omitted). Ohio law therefore governs the issue (See AC ¶¶ 4, 6), and as the Court previously held, "a Plaintiff cannot pierce the corporate veil of one [Ohio] corporation to reach another corporation in which it holds no ownership interest, even if the two corporations are controlled by the same, or substantially the same, owners." Vista Food, 2014 WL 3857053, at *8 (citing Minno v. Pro-Fab, Inc., 905 N.E.2d 613, 617 (Ohio 2009)). It remains undisputed that BC&G holds no ownership interest in Champion and Champion holds no ownership interest in BC&G.

While Weithman may be the common denominator between the two,
his presence in both corporations' ownership structures is
insufficient under Ohio law to pierce the corporate veil. See
Minno, 905 N.E.2d at 617 ("A corporation's veil may not be
pierced in order to hold a second corporation liable for the
corporate misdeeds of the first when the two corporations have
common individual shareholders but neither corporation has any
ownership interest in the other corporation.").

Vista also argues that jurisdiction over Champion arises
under N.Y. C.P.L.R. 302(a)(3), which allows for jurisdiction
over defendants who regularly do business in New York, derive
substantial revenue from goods used in New York, or else both
expect a tortious act to have consequences in New York and
derive substantial revenue from interstate commerce.  Vista
argues that Champion transacted business in New York, relying on
the pricing spreadsheet, the invoices, and periodic phone calls
made into the Empire State. It has already been held that
"t[]elephone calls and other communications to New York,
standing on their own . . . do not necessarily confer [N.Y.
C.P.L.R. 302(a)(3)] jurisdiction." Vista Food, 2014 WL 3857053,
at *5.  The showing is not sufficient to establish that

19

Champion, "regularly does or solicits business" in New York, nor
are there allegations regarding Champion deriving revenue from
interstate commerce.

Vista again fails to establish personal jurisdiction over
Champion.

**Jurisdiction Over BC&G Has Been Established**

It has been previously held that by executing the
Corporate Guaranty Agreement of July 22, 2011, together with the
Credit Application of March 1, 2011, BC&G became subject to New
York jurisdiction.  Vista Food, 2014 WL 3857053, at *10.

**The Breach of Contract Claim Against BC&G is Dismissed**

Although there is jurisdiction over BC&G in New York,
Vista's claims against that company are dismissed on the merits.
The Court previously dismissed Vista's breach of contract claim
against BC&G because it was "entirely reliant on the imputation
of Champion's actions to BC&G on an alter-ego theory," see Vista
Food, 2014 WL 3857053, at *14.  Vista argues that its Amended

20

Complaint asserts "a direct breach of contract action against its customer BC&G" (Pl. Mem. in Opp., Dkt. No. 35, at 16) by alleging that BC&G broke an oral contract made in connection with the approval of credit, whereby Vista would sell BC&G food products at a discounted price in exchange for BC&G's agreement to purchase exclusively from Vista. (AC ¶ 19-23.) The claim fails for several reasons. First, even the updated claim is, in the main, based on the alter-ego theory that has been considered and rejected. (See AC ¶ 23 ("Over the course of its relationship with Vista, BC&G, in conjunction with Champion, purchased, and Vista provided approximately $800,000 in wholesale food products. . . .").) Although the Amended Complaint does allege one $7,000 purchase from BC&G in its own right, prior to Champion's formation (AC ¶ 21), it does not contain an allegation that BC&G failed to pay what was owed on that particular transaction. Second, Vista does not adequately allege a breach of the putative exclusivity agreement with BC&G. Although it does allege in passing that BC&G contacted Vista's suppliers and purchased food directly from them, in violation of the agreement (AC ¶ 57-58), and that BC&G failed to pay the full amount owed (AC ¶ 61), neither assertion holds up even under the lenient analysis performed at the motion to dismiss stage.

Vista's allegations that BC&G violated the exclusivity agreement amount to two sentences, one stating that it purchased products directly from Vista's suppliers, and another stating that this violated the putative oral agreement. (AC ¶ 57-58). Although a claim does not require detailed factual allegations to survive a motion to dismiss, it requires more than this; a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The alleged underpayment, meanwhile, clearly refers to actions taken by Champion, for which BC&G cannot be held liable. (See AC ¶ 54-55 ("In reliance on the accuracy of Champion's invoices, Vista . . . accepted payments from BC&G that were less than what BC&G actually owed . . . . As a result of BC&G's underpayments, BC&G has not fully paid, and is thus in breach of, its obligations to Vista under the BC&G contract.").) And third, there can be no action for breach of the putative oral contract between BC&G and Vista because it would be void under both the Ohio and New York Statutes of Frauds. See Ohio Rev. Code Ann. § 1302.04(A) (barring actions on contracts for the sale of goods that are worth more than $500, unless the contract is in writing and signed by the party it is being enforced against); N.Y. U.C.C. Law § 2-201(1) (same); Ohio Rev. Code Ann.

§ 1335.05 (barring actions on contracts extending longer than a
year, unless the contract is in writing and signed by the party
it is being enforced against); N.Y. Gen. Oblig. Law § 5-701
(same).

## The Money Had and Received and Unjust Enrichment Claims Against
## BC&G Are Dismissed

Vista's claims against BC&G for unjust enrichment and
money had and received are equitable, quasi-contract claims
alternative to breach of contract. As such, they cannot go
forward if there is a valid contract governing the subject
matter of the dispute, even if one of the parties to the claim
is not a party to that contract. See Ellington Credit Fund,
Ltd. V. Select Portfolio Servicing, 837 F. Supp. 2d 162, 202
(S.D.N.Y. 2011) (listing cases); Feigen v. Advance Capital Mgmt
Corp., 150 A.D.2d 281, 283 (N.Y. App. Div. 1st Dep't 1989) ("a
non-signatory to a contract cannot be held liable where there is
an express contract covering the same subject matter."). Since
the Complaint alleges, and the Defendants do not seriously
contest, the existence of a contractual relationship between
Vista and Champion that governs the subject matter at issue (AC

23

¶ 35-36, 65-69), quasi-contract actions against BC&G cannot go forward.

**The Fraud Claim Against BC&G Is Dismissed**

Vista's final claim is for fraud against all Defendants.   In order to state a claim for fraud in New York State, a plaintiff must show 1) a misrepresentation or omission of material fact, 2) which the defendant knew to be false, 3) and which the defendant made with the intention of inducing reliance, 4) which the plaintiff reasonably relied on, and 5) which caused injury to the plaintiff.   Solow v. Citigroup, Inc., 507 F. App'x 81, 83 (2d Cir. 2013).   This claim fails because it is duplicative of Vista's breach-of-contract claim and it is not pled with particularity.

Vista alleges claims for breach of contract and fraud based on the same supposed scheme of "obtaining credit from Vista and then using inflated invoices submitted by a newly-formed, and wholly controlled, subsidiary of BC&G to avoid paying in full for food products purchased with that credit." "Under New York law, however, when fraud claims are merely

24

duplicative of breach of contract claims, they should be dismissed." Vista Food, 2014 WL 3857053, at *15 (citing Coppola v. Applied Elec. Corp., 228 A.D.2d 41, 42 732 N.Y.S.2d 401, 403 (N.Y. App. Div 1st Dep't 2001)). "It is well settled that in order for a fraudulent misrepresentation to be considered separate from a contract, it 'must promise to do something other than what is expressly required by the contract.'" Vista Food, 2014 WL 3857053, at *16 (quoting W.B. David & Co. Inc. v. DWA Commc'ns, Inc., No. 02 Civ. 8479(BSJ), 2004 WL 369147, at *5 (S.D.N.Y. Feb. 26, 2004) ("The mere fact that Defendants allegedly sent false invoices to the Plaintiffs after the consummation of their agreement is not sufficient to make these alleged 'statements' collateral or extraneous to the agreement between the parties.")). Vista has alleged that "BC&G breached its contract with Vista by failing to pay the full amount owing and due for food products purchased from Vista" (AC ¶ 61), and that Defendants committed fraud by "avoid[ing] paying in full for food products purchased with [] credit" (Id. at ¶ 92), Thus, Vista's fraud claim is based solely on what the alleged contract requires. This was also the fatal defect of the fraud claim alleged in Vista's first complaint. See Vista Food, 2014 WL 3857053, at *16.

25

Vista also fails to plead fraud with particularity. "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). A plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004). "Rule 9(b) pleadings cannot be based on information and belief." Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972).

It has been previously held that Vista "fails to allege any facts specific to BC&G that do not rely solely on its theory that BC&G should be held to account for Champion's alleged fraudulent actions." Vista Food, 2014 WL 3857053, at *15. The only fraud-based allegations relating specifically to BC&G within the new Complaint are the conclusory allegations that BC&G "embarked on a scheme to defraud Vista," "formed Champion to serve as the vehicle for creating the fraudulent invoices," and "prepared internal spreadsheets illustrating the inflated prices." (AC ¶¶ 18.)  The allegation that Simpson, a

26

BC&G employee, created the allegedly fraudulent spreadsheet is central to the Amended Complaint (See AC ¶ 51), but the pleading clearly states that she did so as part of her work for Champion. (See AC ¶ 50 "A *Champion* pricing spreadsheet demonstrates how *Champion's* pricing was inflated and how *its* cost numbers were manipulated to hide the scheme." (emphasis added); see also Simpson Aff. ¶ 4 ("I was an employee of both Champion . . . and BC&G."))  The Amended Complaint therefore does not plead the required elements of fraud against BC&G and is insufficient as a matter of law.

**The Motion For Jurisdictional Discovery Is Denied**

Vista has separately moved for a continuance of the motion to dismiss while it conducts jurisdictional discovery. (Dkt. No. 35.)  "A party seeking jurisdictional discovery, like a party seeking other kinds of discovery, bears the burden of showing necessity."  Molchatsky v. United States, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011).  That showing has not been made here.  Vista seeks discovery into "the relationship between Simpson, Weithman, and the entity defendants [Champion and BC&G], and to elicit additional facts regarding their

27

involvement in and knowledge of the perpetration of the fraud .
. . ." (Pl.'s Jurisdictional Discovery Mem., Dkt. No. 36, at
7.) The request, in other words, is to delve further into the
alter-ego theory that the Court rejected in August 2014 and
rejects again today, or into the merits themselves.

The Court "has broad discretion in determining whether
or not to permit discovery aimed at establishing personal
jurisdiction." Yurman Designs, Inc. v. A.R. Morris Jewelers, 60
F. Supp. 2d 241, 244 (S.D.N.Y. 1999). Where a plaintiff does
not establish a prima facie case of jurisdiction, a district
court does not err in denying jurisdictional discovery. See
Frontera Res. Azerbaijan Corp. v. State Oil Co. of the
Azerbaijan Republic, 582 F.3d 393, 397 (2d Cir. 2009) (stating
that it is within a district court's "discretion to deny
jurisdictional discovery when 'the plaintiff [has] not made out
a prima facie case for jurisdiction"); Best Van Lines, Inc. v.
Walker, 490 F.3d 239, 254 (2d Cir. 2007) ("We conclude that the
district court acted well within its discretion in declining to
permit discovery because the plaintiff had not made out a prima
facie case for jurisdiction."). This prima facie showing has
not been made. As discussed above, the facts concerning the

jurisdictional issues in this case are relatively clear and
uncontroverted, showing that although jurisdiction is proper
over BC&G, none of Weithman, Simpson, or Champion have
sufficient contacts with New York to justify being haled into
court here.

        Moreover, the Defendants have made factual submissions
that forestall the need for jurisdictional discovery.  It is
also well established that courts in this Circuit may decide a
Rule 12(b)(2) motion to dismiss "on the basis of affidavits
alone." Woods v. Pettine, No. 13 Civ. 290, 2014 WL 292363, at
*3 (S.D.N.Y. Jan. 27, 2014) (citing Marine Midland Bank, N.A. v.
Miller, 664 F.2d 899, 904 (2d Cir. 1981)); A.W.L.I. Grp., Inc.
v. Amber Freight Shipping Lines, 828 F. Supp. 2d 557, 575
(E.D.N.Y. 2011) ("Jurisdictional discovery is not permitted
where, as here, the defendant submits an affidavit that provides
all the necessary facts and answers all the questions regarding
jurisdiction.") (citing Wafios Mach. Corp. v. Nucoil Indus. Co.,
No. 03 Civ. 9865, 2004 WL 1627168, at *5 (S.D.N.Y. July 21,
2004).  The Defendants in this case have provided affidavits
showing that Champion and BC&G are separate entities with
separate ownership structures.  (E.g, Weithman Aff., Dkt. No.

31, Ex. D., ¶¶ 4-7, 35-37.) Neither company is a subsidiary of
the other, and Weithman is the only owner in common between
them. (See id.) The Defendants' affidavits also establish that
Champion, Simpson, and Weithman have insufficient contacts with
the State of New York to warrant personal jurisdiction. The
Court therefore finds jurisdictional discovery to be improper,
as "additional discovery would not uncover unknown facts or cure
the deficiencies in the Plaintiff's pleading." A.W.L.I. Group,
828 F. Supp. 2d at 575.

Vista objects to the Defendants' use of affidavits
entirely, arguing that they "are not properly considered where,
as here, the opposing party has been deprived of the opportunity
to obtain jurisdictional discovery." (Pl.'s Jurisdictional
Discovery Mem., Dkt. No. 36, at 3 (citing Hoffritz for Cutlery,
Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985); Pilates,
Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 178 (S.D.N.Y.
1995); and Woods v. Pettine, No. 13 Civ. 290(PGG), 2014 WL
292363, at *3 (S.D.N.Y. Jan. 27, 2014))). The cases Vista relies
on are not on point, neither holding that affidavits cannot be
considered on jurisdictional issues nor establishing a right to
jurisdictional discovery. Hoffritz for Cutlery is not a

jurisdictional discovery case.; it simply states that without an evidentiary hearing, and even where the moving party presents controverting evidence, "the plaintiff need make only a prima facie showing that jurisdiction exists," and "pleadings and affidavits are construed in the light most favorable to plaintiff . . . ." 763 F.2d at 57. Pilates, meanwhile, states that "all pertinent documentation submitted by the parties may be considered" on a Rule 12(b)(2) motion to dismiss, and "unlike Rule 12(b)(6) motions, which require conversion into a motion for summary judgment where extrinsic materials are considered, it is well-settled that in considering jurisdictional motions, the Court may consider evidence outside of the pleadings in reaching its decision without necessitating the use of Rule 56." 891 F. Supp. at 178, 178 n.2 (quotations and citations omitted). Woods states the same rule as Pilates: "Because a motion to dismiss for lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings, all pertinent documentation submitted by the parties may be considered in deciding the motion." 2014 WL 292363, at *1 (quotations and citations omitted).  The Court may therefore consider Defendants' affidavits without ordering jurisdictional discovery; see also Gerstle v. Nat'l Credit Adjusters, LLC, No.

31

12 Civ. 7593, 2015 WL 72789, at *2, n.3 (S.D.N.Y. Jan. 6, 2015)
("Both sides attach extensive materials to their motions,
including affidavits, agreements, and newspaper articles. These
materials are considered to the extent they are relevant to the
12(b)(2) motion [but not the separate 12(b)(6) motion].").

"Discovery need not be granted to allow a plaintiff to
engage in an unfounded fishing expedition for jurisdictional
facts." Nationwide Mut. Ins. Co. v. Morning Sun Bus Co., No. 10-
CV-1777, 2011 WL 381612, at *10 (E.D.N.Y. Feb. 2, 2011)
(quotation omitted). As Vista has failed to establish the
necessity for jurisdictional discovery, its motion is denied.

## Conclusion

The motions of Champion, Weithman and Simpson to
dismiss the Amended Complaint for lack of jurisdiction are
granted, the motion of BC&G to dismiss the Amended Complaint for
lack of jurisdiction is denied, the motion of BC&G to dismiss
the Amended Complaint for failure to adequately allege breach of
contract, money had and received, and unjust enrichment is
granted, and the Amended Complaint is dismissed with prejudice.
The motion of Vista for jurisdictional discovery is denied.

It is so ordered.

New York, NY
August / 8, 2015

ROBERT W. SWEET
U.S.D.J.

33